The last case to be argued, United States v. Patrick Lloyd. Good morning, Your Honours. My name is Stephen Uritz, and I represent appellant Patrick Lloyd. I'd like to focus my arguments primarily on the Rule 11 violation. As recognized by the government in its 28-J letter, this court must determine where within the spectrum between United States v. Coffin and United States v. Hollingshed this court stands. In that regard, I'm glad that Judge Chin, one of the judges in Hollingshed, is on the panel today, because in Hollingshed, the court made clear that it was only because of the uncomplicated nature of the charge that it was going to uphold an inadequate Rule 11 colloquy by the same judge. I have a kind of predicate question. Is there any indication in the record that Mr. Lloyd would not have pleaded guilty? Does he want to withdraw his plea now and have a full resentencing and renegotiation of his plea agreement? Based on my conversations with him, yes. So he understands that there are risks in doing that? I've spoken to him, yes, Your Honor. And is there any indication? Did he ever try to withdraw his plea? Not in the district court, no. I think the fact that he immediately filed a pro se notice of appeal may be some indication, but Your Honor is correct. There is nothing in the record before the district court. But we are safe in presuming that he does want to withdraw his plea based on this? I've communicated with him. He's read the briefs. He's communicated with me. And based on that, I was... Because I noticed that there was some reference to potentially conduct that could have been charged that was not. I mean, there are some risks. I understand that, Your Honor. And what I pointed out in my reply brief, I think there's some question regarding the government's ability to do that. Certainly, three days before trial, they had not. And they had years to do that. They had not brought that superseding indictment. So the notion that all of a sudden they were going to charge him with another 25-year offense, I have serious constitutional concerns about the ability to do that, particularly when they say that it's acceptable to them a plea up to 24 years. But essentially, because you're going to exercise your right to trial, we're going to throw in another 25-year quill. The way I view it is imagine an offense enacted by Congress that says the penalty for this offense is 25 years if you don't go to trial but 50 years if you do go to trial. I think this court would have serious problems with those types of... Does that happen all the time? It happens at a time when... I think here it's different because here the government did not bring that charge. It never brought that charge up until right before trial. I've been in cases where the court says, at this point, you had the time to do this. You've had the time to bring the charges. Why are you waking up now? There's no indication in the record, certainly, that they were going to bring those charges. There's nothing new that happened. The fact that the co-defendant pled guilty, that was always the government's theory. I don't think that that should... Like I say, it's something that we could deal with in the future. I've discussed it with my client, but I have serious concerns that the government would do such a thing, and I have serious concerns about the validity of that. So... The court in Hollingshed said that... It recognized that even in that case it wasn't a model of clarity, but it said we're going to uphold it because it's a very straightforward charge. I think whatever the government will say about Pinkerton, it cannot say with a straight face that it's an uncomplicated offense. I mean, if you look at the government's brief, it takes two pages for them to describe the elements of what Pinkerton is, yet none of this was discussed during the plea. So this is not the rare case that the court in Coffin referred to where the court said it would uphold a deficient Rule 11 colloquy. So we start with a deficient allocution, and without the ability to say that the plea was knowing and voluntary, there are numerous cases I've cited in the reply brief, page 3 to 4, where the court has recognized that such a deficient plea colloquy violates a defendant's substantial rights. So I think Lloyd has made all the elements necessary to demonstrate a Rule 11 violation. Turning to the Pinkerton issue... What about the plea agreement?  It doesn't expressly discuss Pinkerton, but your client acknowledged that he had read the agreement and gone over it with his lawyer, et cetera. Why isn't that sufficient? Because that's the whole point of Rule 11. Rule 11 does not say in the case of a plea agreement, we'll do away with the rule. The government would read out the requirements of Rule 11 when there's a plea agreement, but the whole purpose is . . . We've all seen cases where a defendant has a plea agreement, but he really doesn't understand it, and then when the court probes and asks him a question, well, tell me in your own words what it is that you did, a defendant will stumble and will have a hard time articulating, and then the court . . . that will generate further inquiries. Sometimes the defendant will . . . Through the further questions, the defendant will establish that yes, he understands the nature of what he's pleading guilty, but there are times where the defendant will make clear to the court that the defendant doesn't really . . . It's a situation where the lawyer just said, listen, the court's going to ask you questions. You'll just say yes, you understand. This is what you should be doing. I think there's a reason for Rule 11. We all recognize that, and the question is, do we want to make it . . . He was asked in open court whether he agreed with the facts contained in the plea agreement, and he said yes. Right, I understand that, Your Honor, but that's what often happens with defendants, and that's why the rule says, yeah, but make sure you . . . Here in your own words, what is it that he did? It doesn't say, we could do away with that when there's a plea agreement. Turning to the Pinkerton issue, I should have submitted a 28-J letter, and if the court is amenable to it, I can, but one of the arguments that the government makes is that by virtue of his plea, the argument was waived. Two months ago, the Supreme Court decided class versus United States, which held that a plea does not waive a constitutional challenge to an indictment, and that's what we have here. I know it's an uphill battle, but . . . You are asking us to overturn Pinkerton, right? I am, and I recognize that it is an uphill battle, but when it's looked at objectively, and particularly in light of the Supreme Court's modern jurisprudence, I think it logically flows from that. I know it's hard, but frankly, the reason why I made the argument is because when I looked through the facts, the record, I was kind of astonished. What's going on here? Why is he even pleading guilty to this offense? I mean, he's in jail. We're talking about a possessory offense. I know you could come up with a theory, but that's not what Congress did. And so I think at some point the court should revisit it. I think this is a case where the facts warrant it, and I think if an objective look is given, I think the court would agree with me. Could I ask just an administrative kind of question? I was a little confused in looking at the plea transcript and looking at the related case involving Codefendant Spencer, that Judge Sharp seems to be involved in some aspects and Judge McAvoy maybe in others. Because there are some things that strike me as somewhat inconsistent, I was a little confused, and I wonder if . . . I'm not going outside the record, but whether you could just speak to where does this reside? Actually, I was not trial counsel. I was not counsel in the court. The government, in its brief at footnote one, indicates that there was a scheduling conflict. Originally, Judge Sharp had the case. He then reassigned it to Judge McAvoy, but once he determined that there was going to be a plea, it went back to Judge Sharp. I saw the footnote, but I just was . . . My understanding is it had to do with scheduling and things like that. Thank you. May it please the Court. Stephen Clymer for the United States. I'll begin with what counsel refers to as the Rule 11 violation. There are actually three different claims here that get made at various places about what went wrong under Rule 11, and it's important, I think, to distinguish between them. In his opening brief, no claims were made in the trial court. In his opening brief, counsel claims that the error under Rule 11 was the judge had an obligation to explain Pinkerton to the defendant. There's no authority supporting that proposition that I can find anywhere. Then the government replied or responded in its brief. Then it issued a 28-J letter, which brought up the decision this court handed down in Coffman. Then in his reply brief for the very first time, the defendant raised the fact that the judge incorporated the plea agreement as part of the guilty plea colloquy. So our first point with respect to that claim, the claim that Judge Sharp erred by incorporating the plea agreement, is it's waived. This Court . . . Let me just make sure I understand your position. The Rule 11 says that before the court accepts a plea of guilty, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of and determine that the defendant understands the following, and there's a long list, including that the facts . . . The nature of the charges. The nature of the charges, that's right. What I saw in the colloquy was the judge asking, are the facts contained in this plea agreement true? Yes. Then you're admitting them to me? Yes. Then as to the two counts in the indictment, the drug count and the gun count, how do you plead? Guilty or not guilty? Guilty. That, to me, falls short of the court personally informing the defendant of the facts of the case and ensuring that the defendant understands them. Is your position that this does satisfy Rule 11? I haven't said that. I want to make clear . . . That's why I'm asking. I'm sorry. There's two things I want to clarify here. Number one, my first point was not whether it satisfied Rule 11. My first point was that it was never raised. The claim that counsel is making now was not raised until his reply brief, and it's waived. That's point one. Point two, Judge, you raised two different things, and I want to distinguish them under Rule 11. Rule 11 requires that the district court judge address the defendant personally and inform him and make sure he understands the nature of the charge. We agree on that. It does not require that it personally address the defendant and make sure he understands the facts. All it requires, and this is a different subsection of Rule 11, subsection B3, I believe it is, requires that the judge find that there are adequate facts. So this Rule 11 colloquy as to facts was perfectly permissible, and I think Judge Chin's question got to that. The court said, did you read the plea agreement? The plea agreement lays out specific facts, and the defendant adopted those facts. Well, you know, in the Southern District, we would always ask, tell us in your own words what happened. And there certainly is a benefit to having the defendant articulate it in his own words. Sometimes they'll read something, but at least you're hearing it, and we don't have that here. Judge, I agree completely that's the better practice. But my point is that Rule 11 does not require that as to the facts. It does, however, require it as to the charge. So the nature of the charge. Yes. So you think a question that you understand that there's a drug count and a gun count, that that's sufficient? No, and I haven't said that, Judge.  I think the court made clear in Coffin that it's only a very rare case where this practice is acceptable. I am not defending it here. But for three reasons, I suggest to you it doesn't decide the outcome here. Number one, as I've said, it was only raised in the reply brief, and so it's been waived. Number two, there is a valid appeal waiver in this case. The defendant signed an appeal waiver that's unambiguous as to both his conviction and his sentence. The defendant acknowledged in that document he read it, discussed it with counsel, understood it. Judge Sharpe did a very thorough colloquy at the change of plea hearing about that waiver provision. There's no reason why that waiver should not be enforced in this case. Even if you disagree. So you think that these facts provide no basis for being concerned that this was not a knowing and voluntary plea? I do not, Your Honor, and I'll explain why. The plea agreement laid out the nature of Pinkerton liability in the elements that specifically described the defendant being liable if the co-defendant possessed the gun in furtherance of the conspiracy and that was reasonably foreseeable to him. So Pinkerton was described in the plea agreement. The facts in the plea agreement, the defendant also admitted that it was foreseeable to him and it was in furtherance of the conspiracy. So there was plenty here as a basis for Pinkerton. I'm sorry, that admission occurred where? In the plea agreement. In the plea agreement. And it's at 824, I'm sorry, 825 and 826, Your Honor. That's all laid out in the plea agreement. So my point is that even if there was a defect in the Rule 11 colloquy, there was no defect in the appeal waiver. So for those two reasons, because it only comes up in the reply brief and because there's been an appeal waiver here, the defendant's claim regarding the failure of Judge Sharp to give him notice about the nature of the charges does not prevail here. But there's a third reason, and it's one, Judge Carney, that you raised in your questionings to counsel. There's no showing here, in fact, there's no allegation here that but for this deficiency in the plea colloquy that we would have had a different outcome. It's inconceivable that this defendant, had Judge Sharp explained to him the nature of the charges or explained Pinkerton liability, would have said at that point, okay, I'm not pleading guilty. I want my trial. And the sentence was a mandatory minimum, right? Correct. The sentence was a 20. In any lower sentence. That's correct. And so for all those reasons, I'm not defending the plea colloquy here. That's not my point at all. My point is I don't think it dictates the outcome that Mr. Lloyd wants here. That's the point I'm making. And I think the same is true with respect to his other claims. The Pinkerton claims find no support in the case law. They were not raised below, and so plain error applies here. And I don't believe a law review article establishes plain error. There is not a single decision that counsel cites to where any of his Pinkerton claims have been adopted by a court. In fact, one of the claims, the Apprendi claim, was specifically rejected by the Third Circuit in a case called Cordo. Unfortunately, it's not in the briefs. If the court wants the citation, I can provide it here, or I can send the court a letter. But that's been rejected by the Third Circuit in a case back in 2003. The final point I'll make is on the ineffective assistance of counsel claim. It's a novel claim because it doesn't talk about anything counsel did or didn't do here. It simply says it's a bad deal, therefore there must be an effective assistance of counsel. In fact, it's not a bad deal. It's not a bad deal for two reasons. The first reason it's not a bad deal is because it gave the defendant a lower guideline sentence. Under the deal, he was a level 33 and a criminal history category 3, which made his guideline sentence 240 months. Had he not taken the deal, he would have been a level 36 criminal history category 3. His guideline range would have been 240 to 293. Given the extensive violence this defendant and his co-defendants used in this case, it's certainly conceivable what the district court judge would have sentenced somewhere well above the low end of that guideline range. So he got a lower guideline range, and he got the benefit of that lower guideline range when he was sentenced. The second reason why it was to his advantage is he avoided the consecutive 924c charge. And I disagree with counsel that it would have been somehow either legally or morally improper for the government to bring that charge. Three days before this guilty plea, the co-defendant who actually possessed the other guns, not the guns that were charged here, but another set of guns, pled guilty and admitted that he was transporting drugs in the same van those guns were found and the person he was transporting the guns were for Lloyd, for the defendant here. So the government now had a person it knew it could put into the grand jury and compelled to say, I was transporting drugs for Lloyd in the day when I was arrested and guns were found in my van. The government would have been well within its prerogative either at that point or somewhere down the road and still could, quite frankly, charge the defendant with a consecutive 924c. And part of the plea agreement here was the government promised not to do that, and that was a substantial benefit. Even if you disagree with me on the guidelines argument and the 924c argument, he's not entitled to reversal on this claim because we don't know what advice he got from this attorney. His attorney may have told him not to take the plea. He may have done it over advice of counsel. We simply don't know. The record doesn't show us that. Therefore, there's no reason to grant this claim. Unless the Court has questions, that's all I have. Thank you. We'll hear the rebuttal. Just to address my adversary's first argument that this wasn't raised in the opening brief, I'm just looking at page 20 of my opening brief, which notes the fact that the Court failed to comply with both Rule 11b1g and Rule 11b1c. So both of these arguments were raised in the opening brief. As far as the appeal waiver, I've cited the cases. You can't have a valid appeal waiver  I find it interesting how the government notes that there was an extensive colloquy about the appeal waiver, which is somewhat odd. The district court doesn't determine to see whether the plea is knowing and voluntary, but he expends all this effort to see whether the appeal waiver is valid. There's something incongruous about that. We should want to make sure that the defendant understands what he's pleading guilty first before we go extensively to see whether he's knowingly waiving his right. Judge Chin had asked before it couldn't be a lower sentence. That's the point, because even if he had no plea agreement, and in our view, even if he had gone to trial, he still would have been facing... The three points off didn't help him. Certainly the plea agreement, he could have pled guilty without a plea agreement, it wouldn't have helped him. His guidelines would have still been 293. The government says that if the co-defendant, they would have been able to put them in the grand jury. Of course, he didn't have a cooperation agreement. He still had his Fifth Amendment rights. He had not been sentenced yet, so the government wouldn't have been able to do that. This was three days before trial. There's nothing that changed. It was always the government's theory that they knew that Spencer had the guns, and it was their theory that he possessed it for law. So I think based on all of that, the government acknowledges that there was a problem with this plea colloquy here, and the court should send it back, because there was a problem. And this is not the way that a court should be accepting a guilty plea. If we're going to give Rule 11 any meaning, the court has to tell the courts that we mean it. The rule says what it says. Thank you, Your Honor. Thank you. We'll reserve decision. The final case is on submission. I'll ask the clerk to adjourn.